```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


J & J SPORTS PRODUCTIONS,    *
INC.                         *
                             *
v.                           *    Civil Action No. WMN-11-3333
                             *
TAG GALLERIES, LLC           *
                             *
                             *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM & ORDER

Defendant owns and operates an art gallery in Baltimore, Maryland.  Plaintiff is a California corporation that asserts that it owned the distribution rights to "Firepower: Manny Pacquinao v. Miquel Cotto WBO Welterweight Championship Fight Program" (the Program) which was telecast on November 14, 2009. Plaintiff filed this action alleging that, while Defendant was not authorized to show the Program, Plaintiff's investigator entered Defendant's gallery at 12:40 p.m. on November 15, 2009, and observed it being shown on a television watched by 7 or 8 individuals.

The Complaint contains three counts:  a violation of 47 U.S.C. § 605 (Count I); a violation of 47 U.S.C. § 553 (Count II); and a claim of conversion (Count III).  Defendant has filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure asking that the Court dismiss the Complaint in its entirety.  Relying heavily on a recent decision of this Court,

Joe Hand Promotions, Inc. v. Dock Street Enterprises, Inc., Civ. No. WMN-11-1973, 2011 WL 6141058 (D. Md. Dec. 8, 2011), Defendant argues that the Complaint fails to sufficiently allege the elements of a violation of either § 605 or § 553.  Defendant also argues that Maryland law does not recognize the tort of conversion as applied to intangible property rights such as the rights to a television program.

In evaluating a Rule 12(b)(6) motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To be facially plausible, the plaintiff must plead sufficient factual content that would allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  The complaint must be more than a "formulaic recitation of the elements of a cause of action" and must be supported by factual allegations that "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The court must then accept all well-pled factual allegations of the complaint as true, and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Fed. Bureau of Investigation, 1 F.3d 255, 256 (4th Cir. 1993)).

Sections 553 and 605 of Title 47 of the United States Code provide civil and criminal remedies for the unauthorized interception of television communications. As this Court explained in Dock Street, "Section 553, by its plain language, clearly applies only to cable systems: 'No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.'" 2011 WL 6141058 at *3 (quoting 47 U.S.C. § 553(a)(1)). As noted by this Court, "Section 605, however, prohibits the unauthorized interception of 'radio communication,' which some courts equate to satellite transmissions and others interpret more broadly." Id. (quoting 47 U.S.C. § 605(a)(6)). After explaining the split in authority concerning the scope of § 605, this Court adopted the approach of the Seventh Circuit which has concluded that "§ 605 applies to the interception of cable signals before they begin to travel through the cable, while Section 553 applies to transmissions at the point in the system that the transmission is carried by coaxial cable or wires. In other words, the statutes do not overlap." Id. (internal quotation omitted).

Thus, under this Court's view, Plaintiff cannot recover under both § 553 and § 605. Courts have recognized, however, that while a plaintiff "may ultimately have to choose among the

3

theories of liability on which it will proceed, the alleged inconsistency between [a claim under § 553 and a claim under § 605] is not fatal to either count at the pleading stage." J & J Sports Productions, Inc. v. Mayreal II, LLC, Civ. No. ELH-11-3345, 2012 WL 346649 at *2 (D. Md. Feb. 1, 2012). Defendant acknowledges pleading alternative theories of recovery is permitted. ECF No. 14 at 1.[1]

While acknowledging the permissibility of alternative pleading, Defendant asserts that the Complaint states a claim under neither provision. This Court in Mayreal II, however, found allegations similar to those asserted here to be adequate at this stage of the litigation. Plaintiff alleges that it had exclusive distribution rights to the Program. Compl. ¶ 8. Plaintiff alleges that its investigator observed the Program being shown on a television in Defendant's gallery. Id. ¶ 12. Plaintiff further alleges that Defendant was not authorized to exhibit the Program. See id. ¶ 11 (alleging the Defendant exhibited the Program with knowledge that it was "unauthorized" to do so). Implicit in the showing of the Program without authorization is some form of "interception." See Mayreal II, 2012 WL 346649 at *7 (agreeing that "to the extent that a method

---

[1] In Dock Street, the Court dismissed the § 605 claim and allowed the § 553 claim to go forward. Unlike the case at hand, Dock Street was decided on summary judgment, not on a motion to dismiss. The record before the Court made it clear that the defendant had obtained the signal though a cable transmission.

of interception must be alleged under plaintiff's Cable Act causes of action, plaintiff has done so by pleading violations of § 605 and § 553 in the alternative. . . . At the pleading stage, a plaintiff is required only to allege "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity" of the defendant.") (quoting US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010), quoting Twombly, 550 U.S. at 555).

Defendant also faults the Complaint for failing to provide factual support for the conclusion that Defendant exhibited the Program "for financial gain."  ECF No. 12-2 at 6.  The Court would certainly agree that the facts that are included in the investigator's affidavit attached to the Complaint undermine the conclusion that Defendant reaped some financial gain from showing the Program.  Defendant operates an art gallery, not a bar; the investigator indicated that no cover was charged to enter the gallery; and she observed only a small number of people watching the Program on a single television.  Nevertheless, commercial gain or financial benefit "is not relevant to liability," but is only a factor "relevant to an award of enhanced statutory damages."  Mayreal II, 2012 WL 346649 at *7.

The Court now turns to Defendant's challenge of Plaintiff's conversion claim.  Under Maryland law, "a 'conversion' is any

5

distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Allied Inv. Corp. v. Jasen, 731 A.2d 957, 963 (Md. 1999). Under the original common law rule, the plaintiff's property had to be tangible to state a claim for conversion. "That rule has been modified over time and certain intangible property interests may now be recovered through a conversion claim." Id. The Court of Appeals of Maryland, however, has limited the expansion of the rule to include only intangible property rights "that are merged or incorporated into a transferable document," such as a stock certificate, and has refused "to cover completely intangible rights." 731 A.2d at 965. Thus, to state a claim for conversion of intangible rights, a complaint "must . . . contain facts alleging that tangible documents evidencing those [intangible] interests . . . were transferred improperly to [the defendant]. Id.

Referencing this holding in Allied Investment, this Court in Mayreal II questioned whether conversion can be claimed in cable/satellite piracy cases. This Court did not resolve the issue, however, since it was never raised by the defendants in that action. From the fact that neither Mayreal II nor any other Maryland court has specifically ruled on whether the type of broadcast signal at issue here can give rise to a conversion claim, Plaintiff argues that "[a]s the law in Maryland is not

6

conclusive, Plaintiff's claim should survive Rule 12(b)(6) analysis." ECF No. 13 at 11. Plaintiff also notes that while conversion claims in the context of broadcast signals have been found not viable under the common law of some states, they have been found viable under the common law of others. Id. (citing California cases finding conversion claims viable and a Pennsylvania case finding conversion claim not viable).

This Court concludes that, under the teaching of Allied Investment, Plaintiff cannot state a claim of conversion. Plaintiff makes no real argument that it can. Maryland has clearly taken a more restrictive approach to the tort than has been taken by other states. See Alliance for Telecomms. Indus. Solutions, Inc. v. Hall, Civ. No. CCB-05-440, 2007 WL 3224589, at *14 (D. Md. Sept. 27, 2007) ("Maryland has not been as expansive as some states in recognizing intangible rights for the purposes of conversion; it has refused 'to extend the tort . . . to cover completely intangible rights,' limiting recognition to those intangible rights where ownership is established, transferred, or maintained through documentation . . . ."). Thus, decisions from other jurisdictions recognizing the tort in the context of cable/satellite piracy carry little weight. See DirectTV, INc. v. Lockwood, 311 F. Supp. 2d 1147, 1151 (D. Kan. 2004) (in analyzing viability of conversion claim under Kansas law, distinguishing cases decided under California and

7

Massachusetts law because those states define the elements of the tort differently).

Maryland clearly requires the intangible property right allegedly converted to have been merged into a transferable document. Plaintiff offers no such document. Accordingly, Plaintiff's conversion claim will be dismissed. See First Union Nat. Bank v. New York Life Ins. & Annuity Corp., 152 F. Supp. 2d 850, 855 (D. Md. 2001) (dismissing conversion claim where plaintiff did not allege that it was entitled to possession of any document evidencing the property right or that any such documents were necessary to the protection and enforcement of the intangible rights in which it had a security interest); Sharma v. OneWest Bank, FSB, Civ. No. DKC-11-834, 2011 WL 5167762 (D. Md. Oct. 28, 2011) (dismissing converstion claim where plaintiff failed to allege that any tangible document had been converted and observing, "Maryland has decided not to safeguard via the tort of conversion the sorts of purely intangible rights asserted by Plaintiffs").

Accordingly, IT IS this 3rd day of July, 2012, by the United States District Court for the District of Maryland, ORDERED:

1) That Defendant's motion to dismiss is GRANTED in part and DENIED in part, in that Count III is dismissed but the motion is otherwise DENIED; and

    2) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

```
              _____/s/_____
              William M. Nickerson
              Senior United States District Judge
```